1  William M. Krieg, SBN 066485
2  Eric M. Kapigian, SBN 238733
   KEMNITZER, BARRON & KRIEG, LLP
3  2014 Tulare Street, Suite 700
   Fresno, CA  93721
4  Telephone (559) 441-7485
   Facsimile (559) 441-7488
5

6  Bryan Kemnitzer, SBN 066401
   KEMNITZER, BARRON & KRIEG, LLP
7  445 Bush Street, 6th Floor
   San Francisco, CA 94108
8  Telephone: (415) 632-1900
   Facsimile: (415) 632-1901
9

10 Attorneys for MARK R. JONES

11

12                    IN THE UNITED DISRICT COURT

13              FOR THE NORTHERN DISTRICT OF CALIFORNIA

14

15 MARK R. JONES,                    )  Case No.: 3-14-CV-01673-SI
                                     )
16          Plaintiff,               )
                                     )  CLASS ACTION
17                                   )
   vs.                               )  MEMORANDUM OF POINTS AND
18                                   )  AUTHORITIES IN SUPPORT OF MOTION
                                     )  FOR PRELIMINARY APPROVAL OF
19 CENTERONE FINANCIAL SERVICES; and )  CLASS ACTION SETTLEMENT
   DOES 1-10, inclusive,             )
20                                   )
                                     )  Date: December 18, 2015
21          Defendants.              )  Time: 9:00 a.m.
                                     )  Dept:  10
22 _____   )  Judge: Hon. Susan Illston

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ...................................................................................................1

III.    STATEMENT OF THE CASE.............................................................................3

        A. Procedural History ....................................................................................3

        B. Terms of the Proposed Settlement Agreement............................................3

III.    ARGUMENT.........................................................................................................7

        A. The Settlement of a Class Action Requires a Multi-Step
           Court Approval Process............................................................................7

        B. Plaintiff Meets All Requirements for Certification of a Settlement Class..................8

        C. The Proposed Class Settlement Should be Given Preliminary Approval.................13

        D. The Proposed Dates for Class Notice Process ...........................................15

IV.     CONCLUSION......................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

Bartold v. Glendale Federal Bank, (2000) 81 Cal.App.4th 816 ....................................................10

B.W.I. Custom Kitchen v. Owens-Illinois, Inc., (1987) 191 Cal.App.3d 1341 ...........................11

Class Plaintiffs v City of Seattle, (9th Cir. 1992) 955 F.2d 1268 ..........................................7

Classen v. Weller, (1983) 145 Cal.App.3d 27 .............................................................11

Dunk v. Ford Motor Co., (1996) 48 Cal.App.4th 224 ..............................................7,8,9

Hanlon v. Chrysler Corp., (9th Cir. 1997) 150 F.3d 1011 ......................................................8

Kullar v. Foot Locker Retail, Inc., (2008) 168 Cal.App.4th 116 ...............................14

LaSala v. American Savings & Loan Ass'n, (1971) 5 Cal.3d 864 ......................................9,10,12

Malibu Outriggers Bd. of Governors v Superior Court, (1980) 103 Cal.App.3d 573 .................11

McGhee v. Bank of America, (1976) 60 Cal.App.3d 442 .........................................................12

North County Contractor's Assn., Inc. v Touchstone Ins. Svcs., (1994) 27 Cal.App.4th 1085 ....8

Officers for Justice v. Civil Service Comm., (9th Cir. 1982) 688 F.2d 615, 625 ...........................8

Potter v. Pacific Coast Lumber Co., 1951) 37 Cal.2d 592 ..................................................7

Richmond v. Dart Industries, Inc., (1981) 29 Cal.3d 462 ................................................8,10,12

Van Bronkhorst v. Safeco Corp., (9th Circ. 1976) 529 F.2d 943 ...........................................7

Vasquez v. Superior Court, (1971) 4 Cal..3d 800 ....................................................10,11

Wershba v. Apple Computer, (2001) 91 Cal.App.4th 224 ........................................8,12

STATUTES

Bus. & Prof. Code §17200 ...........................................................................................1

Civ. Code §2981 .............................................................................................1,4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Civ. Code §2983 ..................................................................................................1,3

**Rules**

Fed. R. Civ. Proc., rule 23(e) ...........................................................................7

California Rules of Court, rule 3.769 ...............................................................7,8

**Other Authority**

H. Newberg & A. Conte, Newberg on Class Actions (4th ed. 2002) §11.41 ............................7,8

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# I.    INTRODUCTION

This is a putative class action brought by Plaintiff MARK R. JONES ("JONES"), pursuant to California's Rees-Levering Automobile Sales Finance Act, Civil Code §§ 2981 et seq. ("Rees-Levering" or the "Act") and Business and Professions Code §§ 17200 et seq., alleging that Defendant CENTERONE FINANCIAL SERVICES ("CENTERONE") has engaged in business practices that violate the provisions of the Act intended to protect the rights and financial wellbeing of California consumers who purchase cars on credit.  Class representative MARK R. JONES ("JONES") asserts class action claims on behalf of himself and other consumers who bought vehicles under conditional sales contracts governed by the Rees-Levering Act which were later assigned to Merrill Lynch Bank USA or Graypoint Auto Finance Corporation and was serviced by CENTERONE.  The Rees-Levering Act requires highly specific disclosures in a post-repossession "Notice of Intent to Sell Motor Vehicle" ("NOI"), and absolutely bars the lender or any successor in interest from obtaining or asserting a deficiency balance if the lender issues a defective NOI. Civil Code § 2983.2(a).   The Rees-Levering Act's "absolute bar" rule is designed to counterbalance the creditors' extraordinary right to seize and sell collateral without judicial process by requiring "strict compliance" with The Act's required disclosures to consumers.

JONES alleges that CENTERONE issued a defective NOI in violation of Civil Code §2983.2(a) et seq., and has unlawfully collected deficiency balances which it was barred from collecting based on the defective NOI.  CENTERONE maintains that its conduct was done in compliance with the law and the Act. No decision on the merits was made by the trial court.

After discovery, litigation and negotiation, the parties agreed to a settlement in about July, 2015.  The parties have now agreed to a final Settlement Agreement, which is attached to the Declaration of William M. Krieg as Exhibit 1.

In summary, the terms of the settlement provide as follows: CENTERONE will waive outstanding deficiencies owed by about 528 Settlement Class members totaling about $3,568,957; reimburse about $59,186.66, for Settlement Class members who paid money to CENTERONE; instruct the major credit reporting agencies to delete all record of the debt (the "trade line") owed by Settlement Class members to CENTERONE; pay an service award of $2,000 to the Settlement Class Representative; separately pay Settlement Class Counsel's attorneys' fees, costs and expenses, up to an amount that does not exceed $300,000, as outlined in the Settlement Agreement, if approved by the Court; and separately pay all costs of notice and class administration by a third party administrator who will agree to cap its fees and costs at $40,000.

Plaintiff meets all requirements for certification of a settlement class. The legal sufficiency of the NOIs used by CENTERONE with respect to members of the Settlement Class is the predominant common issue that would have determined liability as to all Settlement Class members if the case were not settled.  Plaintiff and each member of the Settlement Class allege that they have suffered similar injury as a result of substantially the same alleged violations, and the class definition is narrowly formed to include only those Settlement Class members that meet the definition set forth in the Settlement Agreement.  The Settlement Class definition does not include persons who are not entitled to relief under the settlement.  This settlement will not affect the rights of Settlement Class members or others to pursue unrelated claims and relief.  For these reasons, the settlement should be approved and the Settlement Class certified for settlement purposes, pursuant to the terms of the Settlement Agreement.

Plaintiff now seeks preliminary approval of this class action settlement.  As demonstrated below, the settlement is fair, reasonable and adequate.  Accordingly, plaintiff moves for

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

preliminary approval of the settlement, certification of the proposed Settlement Class, approval of Notice to the Settlement Class, and the setting of a final approval or "fairness" hearing.

## II.   STATEMENT OF THE CASE

### A.   Procedural History

Plaintiff herein, Mark Jones, purchased a vehicle from a retail dealer under a conditional sale contract that was later assigned to a third party lender, ultimately bought by Merrill Lynch Bank, USA and serviced by CENTERONE.  The conditional sale contract was regulated by the Rees-Levering Automobile Sales Finance Act, and provides that the holder of the contract is subject to all claims and defenses that the consumer could assert against the seller, as required by California and Federal law.

In about August 2010, Mark Jones' vehicle was repossessed by CENTERONE as a result of an alleged default in performance on the conditional sales contract. CENTERONE subsequently mailed a NOI to JONES that did not contain several of the disclosures mandated by Civil Code §§2983.2(a)(1)-(9). (All code references are to the Civil Code, unless otherwise stated.) CENTERONE then sold JONES' vehicle, and assessed a deficiency balance against him. CENTERONE represented to JONES that he owed a deficiency balance, when in fact he did not because of CENTERONE's noncompliance with the Rees-Levering Act's NOI requirements. See, Decl. of Jones, ¶ 2.

### B.   Terms of the Proposed Settlement Agreement

The full text of the parties' settlement agreement is attached to the Declaration of William M. Krieg as Exhibit 1, filed herewith.  The key terms are as follows:

/ / /

/ / /

1.   **Settlement Class Membership**

In general, the Settlement Class is defined as: all persons: (1) who purchased a motor vehicle and, as part of that transaction, entered into an agreement subject to California's Rees-Levering Automobile Sales Finance Act, Civil Code § 2981, et seq.; (b) whose contract was assigned to Merrill Lynch Bank USA ("MLBUSA") or Graypoint Auto Finance Corporation and was serviced by CENTERONE; (c) whose motor vehicle was repossessed or voluntarily surrendered; (d) who were issued an NOI by CENTERONE between March 3, 2010 and the date of Preliminary Approval; and (e) against whose account a deficiency balance was assessed. The Class does not include those persons (1) whose accounts were discharged in bankruptcy, and (2) against whom CENTERONE obtained judgment. (Decl. of Krieg, ¶ 16, Exh. 1, ¶¶ 2.16, 2.17)

2.   **Benefits to Settlement Class Members**

There are about 528 potential class members who will receive the following direct monetary benefits (All benefits, monetary and non-monetary are provided with no requirement to make a claim or take any other action.):

(a)   CENTERONE will forgive the entire deficiency balance of each class member. The amount of the deficiency balances forgiven is about $3,568,957. (Decl. of Krieg, ¶ 15, Exh. 1, ¶5.01.)

(b)   CENTERONE was paid or received from Settlement Class members about $84,552.37 on the deficiency balances.  Each of the Settlement Class members will receive reimbursement of seventy percent (70%) of the amount paid toward his/her deficiency balance. (Decl. of Krieg,¶ 15, Exh. 1, ¶¶ 5.01, 5.02(c))

All Class members will also automatically receive the following non-monetary relief:

(c) CENTERONE will relieve all Settlement Class members from any liability for their deficiency balances. (Decl. of Krieg, ¶ 15, Exh. 1, ¶ 5.03(a))

(d) CENTERONE, either on its own account or through third party collectors, will not take any further action to collect or attempt to collect deficiency balances from Settlement Class members. (Decl. of Krieg, ¶ 15, Exh. 1, ¶ 5.03(b))

(e) For all Settlement Class members, CENTERONE will request that all credit reporting agencies delete all references to the loan, the debt, and any delinquency. (Decl. of Krieg, ¶ 15, Exh. 1, ¶ 5.03(c))

### 3. Settlement Class Representative's Service award

In addition to the relief provided to Settlement Class members elsewhere in the Settlement Agreement, CENTERONE will pay the Settlement Class Representative a service award of $2,000. The service award shall be paid separately from and in addition to the other relief provided under the settlement. (Decl. of Krieg, ¶ 15, Exh. 1, ¶ 5.07)

### 4. Attorneys' Fees, Costs and Expenses

The settlement provides that plaintiff is entitled to receive attorneys' fees, costs and expenses as part of the settlement of this action. CENTERONE agrees to pay Settlement Class Counsel the amount of attorneys' fees and costs awarded by the court up to an amount that does not exceed $300,000. In the event that Settlement Class Counsel seeks a fee and cost award that does not exceed $300,000, CENTERONE agrees not to object to, or seek any appeal of the court's award of such fees and costs at or below that amount. Plaintiff's counsel believes that the amount requested will not exceed $300,000 for all work completed and to be completed through the remainder of the case. Attorneys' fees and costs will be paid separately from and in addition to all other relief to the Class, and subject to the approval of the Court. (Decl. of Krieg, Exh. 1 at ¶ 5.06)

### 5.   Expenses of Settlement Class Administrator

Administration of the class settlement will be by third party Settlement Administrator, Kurtzman Carson Consultants.  CENTERONE shall bear all costs of administration. (Decl. of Krieg, ¶ 24, Exh. 1, ¶ 3.06.)

### 6.   Settlement Class Notice

Notice of Pending Class Action and Proposed Settlement ("Settlement Class Notice") will be given by the Settlement Class Administrator by United States mail following an updated national change-of-address search. CENTERONE will bear all costs of providing Settlement Class Notice. The agreed upon form of Settlement Class Notice is attached to the Settlement Agreement as Exhibit B. (Decl. of Krieg, ¶ 23, 24, Exh. 1, ¶ 3.09)

### 7.   Exclusions, Objections, and Final Approval

The Settlement Class Notice informs Settlement Class members of their rights to "opt out" of the class or object to the settlement and the requirements for doing so, as more fully described in the Settlement Class Notice.  Within ten (10) court days prior to the Final Approval Hearing date, the Class Administrator will file a declaration with the court informing the court of Settlement Class members who requested exclusion, objected to the settlement and/or plan on attending the final approval hearing. (Decl. of Krieg, Exh.1, ¶ 3.09 ; Exh. B)

### 8.   Undistributed and Unclaimed Funds

Any undistributed or unclaimed funds and the residue of uncashed checks to class members shall be paid as *cy pres* to the California Rural Legal Assistance (CRLA), subject to approval by the Court. (Decl. of Krieg, ¶ 22, Exh.1, ¶ 5.05)

## III.   ARGUMENT

### A.   The Settlement of a Class Action Requires a Multi-Step Court Approval Process

The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation. *See* H. Newberg & A. Conte, Newberg on Class Actions, §§ 11.41 (4th ed. 2002) (hereinafter "Newberg"); Class Plaintiffs v. City of Seattle (9th Cir. 1992) 955 F.2d 1268, 1276, *cert. denied sub nom.*, (1992) 506 U.S. 953, 113 S.Ct. 408; Van Bronkhorst v. Safeco Corp. (9th Cir. 1976) 529 F.2d 943, 950; *see also* Potter v. Pacific Coast Lumber Co. (1951) 37 Cal.2d 592, 602-03.

However, despite this preference for settlement, a class action may not be dismissed, compromised, or settled without the approval of the court. *See* Cal. Rules of Court, Rule 3.769; Fed. R. Civ. Proc., Rule 23(e); *see also* Dunk v. Ford Motor Co. (1996) 48 Cal.App.4th 1794, 1800-01; Malibu Outrigger Bd. of Governors v. Superior Court (1980) 103 Cal.App.3d 573, 578-79. Judicial review of class action settlements involves a three-step process and involves specific criteria for settlement approval, described in the Manual For Complex Litigation, Third § 30.41 (Fed. Judicial Center 1995) (hereinafter as "Manual"). The Manual's settlement approval procedure describes the distinct steps as:

> (1)   Preliminary approval of the proposed settlement at an informal hearing;
>
> (2)   Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3)   A "formal fairness hearing," or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

Manual, § 30.41.

The purpose of this procedure, commonly used by California courts, is to protect against any fraud or collusion, and to ensure fairness to absent class members. Dunk, *supra*, 48 Cal.App.4th at 1801; Officers for Justice v. Civil Service Comm. (9th Cir. 1982) 688 F.2d 615, 625; *see also* Newberg, *supra*, § 11.22, *et seq.*

In the preliminary approval motion, the parties present the settlement to the trial court for its review and a preliminary determination that the agreement is sufficiently fair and reasonable to merit class notice and further proceedings.  The purpose of the preliminary evaluation of class action settlements is to determine only whether the proposed settlement is within "the range of reasonableness," and thus whether notice to the class of the settlement terms and conditions and the scheduling of a formal fairness hearing is worthwhile.  *See*, *e.g.*, Cal. Rules of Court, Rule 3.769; North County Contractor's Assn., Inc. v. Touchstone Ins. Svcs. (1994) 27 Cal.App.4th 1085, 1089-90; Wershba v. Apple Computer (2001) 91 Cal. App. 4th 224, 234-35; 4 Newberg, *supra*, § 11.25.  Courts must give "proper deference to the private consensual decision of the parties," since "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." Hanlon v. Chrysler Corp. (9th Cir. 1997) 150 F.3d 1011, 1027. As shown below, the proposed settlement falls well within the range of reasonableness.

**B.    Plaintiff Meets All Requirements for Certification of a Settlement Class**

In Richmond v. Dart Industries, Inc. (1981) 29 Cal.3d 462, the California Supreme Court set forth some general principles regarding class certification. Class actions are authorized "when the question is one of a common or general interest, of many persons, or when the parties are

8

numerous, and it is impracticable to bring them all before the court." *Id.* at p. 470. The Court explained further:

> "The party seeking certification as a class representative must establish the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation omitted].    The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representative with claims or defenses typical of the class; (3) class representatives who can adequately represent the class."

*Id.*; See also <u>Dunk</u>, *supra*, 48 Cal.App.4th at 1806.

Although class certification requirements must be met when a class is certified for settlement purposes, courts apply a lesser standard of scrutiny in such circumstances. *Id.* at 1807, fn. 19.

Consumer cases that involve the legality or interpretation of standard form documents are ideal for class adjudication. See <u>La Sala v. American Savings & Loan Ass'n</u> (1971) 5 Cal.3d 864, 877 ("Controversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party.").

### 1.    The Class is Sufficiently Numerous

There are about 528 customer accounts meeting Settlement Class definition. CENTERONE's records reflect $3,568,957 in deficiencies outstanding on Settlement Class members' accounts. (Decl. of Krieg, ¶ 17, Exh. 1, ¶ 5.01.)  Accordingly, the number of class members is sufficiently large to make the joinder of all parties impracticable, and warrants class action treatment for settlement purposes.

/ / /

/ / /

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

### 2. The Class is Ascertainable

Demonstrating an ascertainable class is a relatively simple issue. <u>Richmond</u>, *supra,* 29 Cal 3d at p. 478. As stated in <u>Bartold v. Glendale Federal Bank</u> (2000) 81 Cal.App.4th 816, "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Id.* at p. 828.

CENTERONE's internal records have identified Settlement Class members, and the amounts collected from and amounts owed by Settlement Class Members. CENTERONE has submitted its declaration that about 528 Class Members have received allegedly defective NOIs, accounting for about $3,568,957 of deficiency balances. (Decl. of Krieg, ¶ 17, Exh. 1, at ¶ 5.01.) Also, CENTERONE identifies Class members that have paid deficiency amounts totaling about $84.552.37. (Decl. of Krieg, ¶ 17, Exh. 1, at ¶ 5.01)   Thus, Settlement Class members are sufficiently ascertainable, and have, in fact, been ascertained.

### 3. There is a Well-Defined Community of Interest

#### a. Common questions of law and fact predominate

Consumer cases such as this, which question the validity of form documents, are ideally suited for class-wide adjudication. See <u>La Sala</u>*, supra,* 5 Cal.3d at 877 ("Controversies involving widely used contracts of adhesion present ideal cases for class adjudication; the contracts are uniform, the same principles of interpretation apply to each contract, and all members of the class will share a common interest in the interpretation of an agreement to which each is a party.")

The commonality factor requires that either a common question of fact or law predominate. Common questions of law and fact predominate when "'the common questions are sufficiently pervasive to permit adjudication in a class action rather than in a multiplicity of suits. '" <u>Vasquez</u>

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

v. Superior Court (1971) 4 Cal.3d 800, 810. At issue in the present case is whether the NOIs issued by Defendant complied with the Rees-Levering Act. The NOIs issued by Defendant are based on forms, in that information relevant to the given consumer is filled in on each form but the manner and scope of the content disclosed is consistent from one NOI to the other as it is with the NOIs issued to Plaintiff.

Consequently, if the form does not contain the required information, or does not present that information properly, those lacks will be consistent across all NOIs issued to Class Members. Thus, if the form is determined to be deficient as a matter of law, all NOIs issued to Class Members will be deficient as a matter of law, satisfying the requirement that common questions of law or fact predominate. While each Class Member is likely entitled to relief in a differing amount, "The requirement of a community of interest does not depend upon an identical recovery." Vasquez, supra, 4 Cal.3d at 809. (Decl. of Krieg, ¶ 18.)

**b.    Plaintiff's claims are typical of the class claims**

The interests of the class representatives need not be identical with those of the class. B.W.I. Custom Kitchen v. Owens-Illinois, Inc. (1987) 191 Cal.App.3d 1341, 1347. Rather, the requirement is that the class representative be situated similarly to the class's other members. Classen v. Weller (1983) 145 Cal.App.3d 27, 46. The typicality requirement does not focus on the representative's personal characteristics or the individual circumstances. Rather, typicality focuses on the proposed representative's claims as they relate to the Defendant's conduct. A representative's claim is typical if it arises from the same event, practice or course of conduct that gives rise to the other class members' claims and if his or her claims are based on the same legal theory. *Ibid.* In the present case both the plaintiff and the class members are claiming that Defendant may not collect deficiency balances because of deficient NOIs issued by Defendant.

11

The typicality requirement is therefore satisfied as the claims arise from the same course of conduct by the Defendant and the claims are based on the same legal theory.   (Decl. of Krieg ¶ 18; Decl. of Jones ¶ 2-3.)

          **c.**      **The representative Plaintiff and Plaintiff's Counsel will adequately represent the class**

The adequacy requirement is established by two factors:  (1) Plaintiff's counsel is qualified to conduct class litigation; and (2) the named Plaintiff's interests are not antagonistic to the class. Richmond, *supra,* 29 Cal.3d at 467; McGhee v. Bank of America (1976) 60 Cal.App.3d 442, 450. These factors are both satisfied here.  Plaintiff is represented by counsel who have substantial experience representing consumers in class actions, including numerous class actions involving alleged failure to comply with Rees-Levering's NOI requirements, and are qualified to conduct the litigation on behalf of the class. (Decl. of Krieg, ¶¶ 18,19.)  Plaintiff's counsel have no personal or financial interests antagonistic to Plaintiff or the Settlement Class, and reimbursement of attorneys' fees and costs do not in any way affect or reduce any relief or refunds to the class. (Decl. of Krieg, ¶ 19.)

The "adequacy" and "typicality" test examines whether a representative's claims "arise from the same nucleus of operative facts as those of class members and whether the class representatives are free of irreconcilable conflicts."    La Sala, *supra,* 5 Cal.3d 864 at 871. Moreover, "only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." Wershiba, *supra,* 91 Cal.App.4th at 238.   No such conflict exists here. The Representative Plaintiff has no personal or financial interests antagonistic to Settlement Class and are ready, willing, and able to participate in the legal process and are eager to fight for the class. (Decl. of Krieg ¶¶ 18, 19; Decl. of Jones ¶ 5.)

        **d.**     **Class certification is the superior means of settling the controversy**

Aside from the factors discussed above, class treatment of the settled claims is far superior to individual adjudication or settlement. Class wide adjudication will save valuable time, effort, and resources for the parties and the court, and is therefore greatly superior to other available methods for the fair and efficient adjudication of the controversy.

Plaintiff believes that because the Defendant's allegedly defective NOI has resulted in the invalid collection and attempts to collect deficiency payments from the members of the potential class, class wide adjudication of the merits for all the class members' claims will provide for uniform application of the law and a speedy determination for all affected individuals. Requiring each person to bring an individual claim would not be in the best interests of Settlement Class members, and would tremendously and unnecessarily burden the courts. Also, due to the technical nature of the alleged NOI violations, a significant number of potential class members are likely unaware that their rights have been violated. For these, and the reasons stated above, a class action is not simply superior, but the only realistic means of equitably resolving this controversy.

**C.**     **The Proposed Class Settlement Should be Given Preliminary Approval**

In this case, the proposed settlement warrants preliminary approval. The agreement is a fair, reasonable and adequate resolution of the claims asserted, and indeed provides for full restitution of all the money paid on deficiency balances to all members of the Settlement Class, and provides the full range of non-monetary relief to the entire Settlement Class. (Decl. of Krieg, ¶ 25.) Importantly, as a result of this lawsuit, about $3,568,957 in Settlement Class members' deficiency balances will be extinguished, and up to $59,186.66 in refunds of deficiency payments made by Settlement Class members will be reimbursed by CENTERONE.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

The settlement is fair and reasonable and highly beneficial to the class. As explained in the accompanying Decl. of W. Krieg, the class will receive all or nearly all the benefits and relief it could obtain if the class prevailed in a trial, without the attendant costs, delay and risk. As held in Kullar v. Foot Locker Retail, Inc. (2008) 168 Cal. App. 4th 116, 129: "While an agreement reached under these circumstances presumably will be fair to all concerned, particularly when few of the affected class members express objections, in the final analysis it is the court that bears the responsibility to ensure that the recovery represents a reasonable compromise, given the magnitude and apparent merit of the claims being released, discounted by the risks and expenses of attempting to establish and collect on those claims by pursuing the litigation."

As to the non-monetary relief, CENTERONE has agreed to completely clear Settlement Class members' credit reports of the entire record of the debt, default, repossession and deficiency balances owed. The non-monetary relief will be provided automatically, without the need for any affirmative action by the Settlement Class member, thus ensuring that this relief will be provided to all, without procedural obstacles.

The settlement also provides that Settlement Class Counsel is entitled to recover attorneys' fees, costs and expenses not to exceed $300,000, and subject to approval by the Court at the time of the Fairness Hearing. This will be provided separate from and in addition to the relief provided to the Class. (Decl. of Krieg, Exh. 1, ¶ 5.06) In addition, the Settlement Class Representative will receive a $2,000 service award.

Essentially, Plaintiff was able to resolve this case on terms that track what the Plaintiff was seeking in the original Complaint and obtain 70% restitution of all money paid by Class Members. All other relevant factors also weigh in favor of approval of the settlement. Plaintiff's Counsel conducted sufficient evaluation of the merits of the case and of CENTERONE's defenses, and

14
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

CENTERONE will provide a declaration under oath that the figures it has provided are accurate. The settlement was negotiated at arm's length, and Settlement Class Counsel have substantial experience in class action litigation. (Decl. of Krieg, ¶¶ 15, 19.) The result is a fair and reasonable settlement that achieves full monetary relief, and will automatically provide significant non-monetary benefits to each Class Member. (Decl. of Krieg, ¶ 25.)

**D.    Proposed Dates For Settlement Class Notice Process**

To facilitate the class notice and approval process, the parties have jointly proposed the following schedule, which is reflected in the accompanying proposed order:

| | |
|---|---|
| Preliminary approval hearing: | December 18, 2015 |
| Settlement Class Notice mailed by: <br> [30 days after Preliminary Approval] | January 19, 2016 |
| Deadline for mailing requests for exclusion: <br> [60 days after Settlement Class Notice mailed] | March 21, 2016 |
| Deadline for filing and serving Objections/Opt-out: <br> [60 days after Settlement Class Notice mailed] | March 21, 2016 |
| Final Approval and Attorneys' Fees hearing: | May 13, 2016 |
| Distribution date:[15 days after Final Order] | May 31, 2016 |

**IV.    CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the proposed settlement, approve the Settlement Notice as proposed, and schedule a final approval hearing.

/ / /

/ / /

15
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

Dated: December 3, 2015

KEMNITZER, BARRON & KRIEG, LLP

/s/ William M. Krieg, Esq.

By: _____
      WILLIAM M. KRIEG,
      Attorney for Plaintiff and the Class

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT