1  William M. Krieg, SBN 066485
2  Eric M. Kapigian, SBN 238733
   KEMNITZER, BARRON & KRIEG, LLP
3  2014 Tulare Street, Suite 700
   Fresno, CA  93721
4  Telephone (559) 441-7485
   Facsimile (559) 441-7488
5
6  Bryan Kemnitzer, SBN 066401
   KEMNITZER, BARRON & KRIEG, LLP
7  445 Bush Street, 6th Floor
   San Francisco, CA 94108
8  Telephone: (415) 632-1900
   Facsimile: (415) 632-1901
9
10 Attorneys for MARK R. JONES
11
12            IN THE UNITED DISRICT COURT
13         FOR THE NORTHERN DISTRICT OF CALIFORNIA
14
15 MARK R. JONES,                      )  Case No.: 3-14-CV-01673-SI
                                       )
16        Plaintiff,                   )
                                       )  CLASS ACTION
17                                     )
   vs.                                 )  MEMORANDUM OF POINTS AND
18                                     )  AUTHORITIES IN SUPPORT OF MOTION
                                       )  FOR ATTORNEYS' FEES AND COSTS
19 CENTERONE FINANCIAL SERVICES; and   )
   DOES 1-10, inclusive,               )
20                                     )  Date: May 13, 2016
                                       )  Time: 9:00 a.m.
21        Defendants.                  )  Dept:  1
                                       )  Judge: Hon. Susan Illston
22 _____)
23
24
25
26
27
28

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ..............................................................................................1

II.   LEGAL ARGUMENT.........................................................................................3

A.  Class Counsel is Entitled to an Award of Fees and Costs .........................................3

1.   Settlement Terms Regarding Fees and Costs are
     Fair and Reasonable..................................................................................3

2.   The Fees Requested are Supported by the Lodestar
     Adjustment Method ..................................................................................4

3.   Plaintiff's Attorney's Fees Have Been Reasonably Incurred ..................5

4.   The Lodestar—Actual Time Expended ....................................................6

5.   Difficulty of Issues and Skills Required ..................................................7

6.   Counsel's Hourly Rate is Reasonable.......................................................7

7.   The Contingent Fee Factor........................................................................8

8.   The Lodestar Enhancement Requested is Modest and Well
     Within the Standard for Multipliers in Similar Litigation,
     Based on the Results Achieved and Other Factors .................................10

9.   The Cross-Checking Method Supports Approval of the
     Requested Fee .........................................................................................12

B.  The Requested Incentive Award to Jones is Reasonable and Should be Approved .14

III.  CONCLUSION ................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**California Cases**

Amaral v. Cintas Corp. No. 2, (2008) 163 Cal.App.4th 1157 ...................................6, 11

Bank of America v. Cory (1985) 164 Cal.App.3d 66 ...................................................13

Blum v Stenson, (1984) 465 U.S. 886, 896 ...................................................................7

Cazares v. Saenz (1989) 208 Cal.App.3d, 279 ..............................................................8

Cerra v. Blackstone, (1985) 172 Cal.App.3d 604 ..........................................................3

Chavez v. Netflix, (2008) 162 Cal.App.4th 43 ...............................................11,12,13,14

City of Oakland v. Oakland Raiders (1988) 203 Cal.App.3d 78 ..................................11

Davis v. City of San Diego, (2003) 106 Cal.App.4th 893 ...............................................7

Downey Cares v. Downey Community Dev. Comm, 196 Cal.App.3d 983 ...........................4,6,8

Ellis v. Toshiba American Information System, Inc., (2013) 218 Cal.App.4th 853 ...................13

Folsom v. Butte County Asss'n of Governments, (1982) 32 Cal.3d 668 .......................................3

Graham v. Daimler-Chrysler, (2004) 34 Cal.App. 4th 553 ...........................................14

Gen. Tel. Co. of the Southwest v. Falcon, (1982) 457 U.S. 147, 155 ...........................................15

Horsford v. Board of Trustees of California State University, (2005, 5th Dist.)
       132 Cal.App.4th 359,394            ...........................................................6,7,8

Ketchum v.Moses (2001) 22 Cal.4th 1122       ...........................................5,8,11

Lealao v. Beneficial California, Inc., (2000) 82 Cal.App.4th 19...........................................3,11,12

Mandel v. Lackner, (1979) 92 CA.3d 747,781 .............................................................7

Press v. Lucky Stores, (1983) 34 Cal.3d 311 ................................................................5

Sanders v City of Los Angeles, (1970) 3 Cal.3d 252 ...................................................12

Serrano v Priest, (1977) 20 Cal.3d 25 ................................................................5,6

Serrano v. Unruh, (1982) 32 Cal.3d 621 ................................................................5

State v. Meyer, (1985) 174 Cal.App.3d 1061 ................................................11

Vo v. Las Virgenes Municipal Water Dist., (2000) 79 Cal.App.4th 440 ....................................5

Wershba v. Apple Computers, (2001) 91 Cal.App.4th 224 ................................................11

**Federal Cases**

Arenson v. Board of Trade, (N.D. Ill. 1974) 372 F. Supp. 1349 ................................................11

Armour v. Network Assoc., Inc., (N.D. Cal. 2001) 171 F. Supp. 1044 ......................................15

Barcia v. Contai-A-Way, Inc., 2009 WL 587844 (S.D. Cal, March 6, 2009) at *5 ...................15

Bussie v. Allmerica Financial Corporation, 1999 WL 342042, *4 (D. Mass. May 19,1999) ....15

Gonzalez v. City of Maywood, (9th Cir. 2013) 729 F.3d 1196 ......................................................4

Hanlon v. Chrysler Corp., 150 F.3d 1011 (9th Cir. 1998) ............................................................12

Hensley v. Eckerhart, 461 U.S. 424, 426, 440, 103 S.Ct. 1933, 1942, 1943 (1983) ...................9

In re Activision Sec. Litigation, (N.D. Cal. 1989) 723 F. Supp. 1373 .........................................14

In re Cenco Securities Litigation (N.D. Ill. 1981) 519 F.Supp. 332 ...........................................11

In re First Capital Holdings Corp. Fin. Prod. Secs. Litigation, 1992 U.S. Dist. LEXIS14377 at *13 (C.D. Cal. June 10 1992) ................................................................4

In re Nucorp Energy, Inc. 764 F.3d 655, 659-660 (9th Cir. 1985) ...............................................9

In re Relafen, 231 R.R.D. 52 (D. Mass. 2005) ..........................................................................15

Kenney v. Int'l Bhd. of Elec. Workers, 939 F.2d 690, 695 (9th Cir. 1991) .....................................9

Kirkbride v. Continental Casualty (N.D. Cal. 1993) 1993 WL 255497 ......................................15

Mann & Co. v. C-Tech Indus., Inc. 2010 WL 457572 (D. Mass. Feb. 5, 2010) at *2 ...............15

Mangold v. California Public Utilities Comm'n 67 F.3d 1470, 1478 (9th Cir. 1995) ...................3

Morales v. City of San Rafael (9th Cir. 1996) 96 F.3d 359, 364 ....................................................9

National Assn. of Concerned Veterans, Secretary of Defense, (D.C. Cir. 1982) 675 F.3d 1319 ..7

Shaw v. Toshiba America Information Systems, Inc. (E.D. Tex. 1000) 91 F. Supp.2d 942 .......13

Shirrod v. Dir., Office of Workers' Comp. Programs, 809 F.3d 1082, 1086 (9th Cir. 2015) ..........7

Stanger v. McGee, No.13-56903, -F.3d-2016, WL 191986 *4 (9th Cir. Jan. 15, 2016).............9,13

Staton v. Boeing Co. 327 F.3d 938, 972 (9th Cir. 2003) ..................................................................3

Vizcaino v. Microsoft (9th Cir. 2002) 290 F.3d 1043 ....................................................................14

**Statues**

Fed. R. Civ. P. 23(h) ...............................................................................................2

Bus. & Prof. Code §17200 ...............................................................................................1

Civ. Code §2981 ...............................................................................................1,3

Civ. Code §2983 ...............................................................................................3

Code Civ. Proc. § 1021.5 ...............................................................................................3

## I.    INTRODUCTION

This class action lawsuit is brought by Plaintiff MARK R. JONES ("JONES"), pursuant to California's Rees-Levering Automobile Sales Finance Act, Civil Code §§2981 et seq. ("Rees-Levering" or the "Act") and Bus. & Prof. Code §§ 17200, et seq. ("UCL"), alleging that Defendant CENTERONE FINANCIAL SERVICES ("CENTERONE") issued statutorily mandated post-repossession notices, commonly known as a notice of intent to dispose of a repossessed vehicle ("Notice of Intent" or "NOI"), to JONES and the class following repossession of their motor vehicles, which failed to comply with the requirements of the Act.

After discovery, litigation, two motions to dismiss, motion to remand and negotiation, the parties agreed to a settlement in about July 2015, which resulted in a final, formal Settlement Agreement in about November 2015.

The Settlement Agreement provides substantial and significant relief to the Settlement Class, achieving as much or more than Settlement Class members may have achieved had they prevailed at trial. On December 28, 2015, this Court granted Preliminary Approval of the Settlement Agreement by which about 528 Settlement Class members will receive nearly $3.5 million in debt relief, a refund of about $59,186.66 previously collected by CENETERONE from Class members, and substantial non-monetary benefits, including credit repair.

This motion seeks approval of attorneys' fees and costs of $300,000, representing less than 8.4 % of the total monetary benefit to the Settlement Class, and represents Class Counsel's actual documented lodestar fee, with a modest 1.43 lodestar enhancement. This motion further seeks an order approving the incentive award of $2,000 to plaintiff Mark Jones, without whose commitment and participation this case would not have been possible.

For the purposes of this fee motion, it is significant that Class Counsel have obtained an excellent result, with nearly full relief and meaningful benefits for the entire Class, and importantly, without the need for Class members to submit a claim or take other action in order to receive the benefits, and after nearly two years of initially hard fought litigation.

Plaintiff respectfully requests that the Court grant this motion for combined attorneys' fees and costs of $300,000. (Settlement Agreement ¶ 5.06) The amount of the fees requested does not come out of the class recovery and does not in any way affect the Settlement Class member's benefits. This amount is well within the range of reasonable fees based on a lodestar assessment of the hours spent and services rendered in this action. The negotiations and agreement between the parties for fees and costs did not take place until after the parties reached an agreement on settlement for the class. Notice to the Class of the amount of the fees and costs to be requested was provided in the Class Notice. There were no objections.

Because the settlement was negotiated at arms-length by experienced class counsel and defense counsel acting in the best interests of their respective clients, and because the settlement is fair, reasonable and adequate, and to promote the policy of good faith settlement of disputes in complex litigation, this motion should be approved.

## II.   LEGAL ARGUMENT

### A.   Class Counsel is Entitled to an Award of Fees and Costs

Federal Rule of Civil Procedure 23(h) provides that, "[i]n a certified class action, the court may award reasonable attorneys' fees and non-taxable costs that are authorized by law or by the parties' agreement." The present request is authorized under both prongs.

First, because the class claims arise under fee-shifting state law, the Court should apply California state law in ascertaining the entitlement to attorney's fees and the reasonableness of the

2

amount to be awarded. <u>Mangold v. California Public Utilities Comm'n</u>, 67 F.3d 1470, 1478 (9th Cir. 1995) (affirming fee multiplier award in District Court action pursuant to California Code of Civil Procedure §1021.5).

The present action was brought under the provisions of the Rees-Levering Automobile Sales Finance Act, Civil Code §2981 *et seq*. The Rees-Levering Act is a consumer protection statute. <u>Cerra v. Blackstone</u> (1985) 172 Cal.App.3d 604, 608. To encourage enforcement of the Act in the public interest, it provides that the prevailing party "shall" be awarded attorneys' fees and costs in any litigation brought under the Act. Civil Code §2983.4. Pursuant to Cal. Code Civ. Proc. §1021.5, California has a strong public policy in favor of "encourag[ing] public interest litigation that might otherwise be too costly to pursue," and of ensuring that "worthy claimants [are not] silenced or stifled because of a lack of legal resources." <u>Folsom v. Butte County Ass'n of Governments</u>, (1982) 32 Cal.3d 668, 683-684; <u>Lealao v. Beneficial California, Inc.</u>, (2000) 82 Cal.App.4[th] 19, 41. The public benefit of this class action settlement would simply not have been possible but for the efforts of Class Counsel.

### 1. Settlement Terms Regarding Fees and Costs are Fair and Reasonable.

As provided by the Settlement Agreement (¶ 5.06) Class Counsel seeks approval of attorney's fees and costs incurred in the amount of $300,000, which also includes all fees and costs to be incurred through the final completion of all matters necessary to the finally comply with this settlement and the Court's order.

In discharging its duty to determine the fairness of attorneys' fees in a class action settlement, the Court's primary concern is to ensure that the process of negotiation leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class." <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 972 (9th Cir. 2003).

Here, the fees represent only 8.4 % of the total monetary benefit. Significantly, the payment of attorneys' fees and costs does not diminish or affect any relief to the Class. Where, as here, "the fee was negotiated at arms' length with sophisticated [parties] represented by experienced attorneys who were intimately familiar with the case, the risks, the amount and value of their time, and the nature of the result obtained for the class…the Court [should be] reluctant to interpose its judgment as to the amount of the attorneys' fees in the place of the amount negotiated." In re First Capital Holdings Corp. Fin. Prod. Secs. Litigation, 1992 U.S. Dist. LEXIS14377 at *13. (C.D. Cal. June 10, 1992).

The attorney's fees agreed upon as part of this settlement were negotiated with opposing counsel only after an agreement was reached as to all monetary and non- monetary relief to be provided to the class. This was done in order to fulfill counsels obligation to obtain the best possible relief for the class, independent of and untainted by any consideration of attorney's fees and costs. After reaching an agreement for relief to the class, Plaintiff's counsel offered to submit the issue of attorney's fees to the court for resolution if an agreement on fees could not be reached with CENTERONE. This was done to assure that any disagreement as to fees would not obstruct a favorable settlement for the class. Further negotiation resulted in the current agreement as to combined attorney's fees and costs of $300,000, to be paid separately from the relief to the Class. (Decl of Krieg, ¶ 13.)

   2.   **The Fees Requested are Supported by the Lodestar Adjustment Method.**

In determining the reasonableness of the requested fee award under California law, the Court should apply the "lodestar-multiplier" method. Downey Cares v. Downey Community Dev . Comm. 1987) 196 Cal.App.3d 983, 995-996. Federal courts look to State law to determine the calculation of an appropriate lodestar multiplier. Gonzalez v. City of Maywood (9th Cir. 2013)

729 F.3d 1196, 1210-11 ["Plaintiffs challenge the fee award on the ground that the district court erred when it failed to analyze whether Plaintiffs should receive a multiplier under California state law. . . on remand, the district court should analyze and explain whether Plaintiffs should receive a state-law multiplier."]

Under this approach, the court begins with the lodestar figure, based on a "careful compilation of the time spent and reasonable hourly compensation for each attorney involved in preparation, prosecution and presentation of the case." Serrano v. Priest (1977) 20 Cal.3d 25, 48. The lodestar-multiplier approach has been consistently applied and upheld. Ketchum v. Moses (2001) 22 Cal.4th 1122, 1131-32; Serrano v. Unruh (1982) 32 Cal.3d 621, 625 fn. 6; The lodestar is the number of hours reasonably expended multiplied by the reasonable hourly rate. Press v. Lucky Stores (1983) 34 Cal.3d 311, 325. The reasonableness of the hours claimed is assessed by "the entire course of the litigation, including pretrial matters, settlement negotiations, discovery, [and] litigation tactics." Vo v. Las Virgenes Municipal Water Dist. (2000) 79 Cal.App.4th 440, 447.

3.   **Plaintiff's Attorney's Fees Have Been Reasonably Incurred.**

The fundamental factors to be considered by the Court in determining reasonable attorney's fees are a compilation of actual time spent and reasonable hourly rate. Other facts which the court may properly consider:

(1)    time and labor expended;

(2)    novelty and difficulty of the issues;

(3)    skill required to perform the legal services;

(4)    customary fee for similar work;

(5)    whether the fee is fixed or contingent (higher awards to contingent fee cases due to risk);

(6)    experience, reputation, and ability of counsel (ABA Code, DR 201-6(B)), and;

(7)    the degree of success and other circumstances.

See Serrano v. Priest (1977) 20 Cal.3d 25, 48-49; Amaral v. Cintas Corp (2008) 163 Cal.App.4th 1157 (citing *Serrano* factors with approval); Downey Cares v. Downey Community Devel. (1987) 196 Cal.App.3d 983.

In this case, evidence supports each factor justifying the fee request:  (1) the actual time expended is well documented; (2) this case involves the unique area of statutory law which contains intricacies with which most attorneys are unfamiliar;  (3) this case required both specialized knowledge of applicable law and litigation skills, particularly in the area class action litigation and the nuanced requirements of the Rees-Levering Act provisions regarding vehicle repossessions, and novel issues, such as raised by CENTERONE in its two Motions to Dismiss,; (4) the fee rates claimed are comparable to rates for experienced litigators in specialty practice areas in this geographical area; (5) Class Counsel accepted this case on contingency, agreeing to be paid only if he prevails, and (6) the specialized experience of counsel justifies the current rate. Evidence of each of these elements is set forth in the Declaration of William M. Krieg, filed herewith.

### 4.    The Lodestar – Actual Time Expended.

The primary factor for initial consideration is the "actual time expended."  "The court is required to begin by determining 'all the hours reasonably spent' and multiplying that total by the reasonable hourly rate in the community—"[t]he resulting sum is the 'lodestar.'" Horsford v.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Board of Trustees of California State University (2005, 5th Dist.) 132 Cal.App.4th 359, 394.   In a statutory fee award, use of the lodestar approach is mandatory. *Ibid.*

     5.    **Difficulty of Issues and Skills Required**.

Few attorneys practice in this specialized field of Rees-Levering Act violations, and fewer still in related class actions.  The issues raised by CENTERONE in defense of this case were sophisticated, technical, and outside the knowledge and experience of most practitioners, and CENETERONE'S counsel presented an extremely aggressive defense of the case, as shown in the court's motion docket.  Litigation of such cases involves a complex interplay between the merits of the Rees-Levering Act claims, evaluation and negotiation of potential remedies for the class, and class action requirements. In this case, counsel for CENTERONE was very experienced and skilled in litigating all potential defenses, and challenged Class Counsel on matters of discovery, the merits of the alleged legal violations.

     6.    **Counsel's Hourly Rate is Reasonable**.  Once plaintiff submits evidence that the "rates are in line with those prevailing in the community for similar services..." ( Blum v. Stenson (1984) 465 U.S. 886, 896), the burden shifts to the opposing party to present evidence to the contrary.  National Assn. of Concerned Veterans v. Secretary of Defense (D.C. Cir. 1982) 675 F.2d 1319, 1326.  Plaintiffs' counsel's hourly rate is comparable to rates charged by specialists and experienced counsel in the relevant geographical community.  *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015) Counsel's declaration is sufficient evidence of the prevailing rate. Davis v. City of San Diego (2003)106 C.A.4th 893, 903.  Further, counsel's own billing rates carry a presumption of reasonableness. Mandel v. Lackner (1979) 92 CA3d 747, 761

7.    **The Contingent Fee Factor**.  Courts have long recognized that under the lodestar-multiplier approach, the risk of not recovering fees is a significant factor in determining the reasonable amount of court-awarded fees.  The California Supreme Court has mandated that the risk of taking a case on a contingent fee basis, and the delay in payment until the end of a successful case, justifies a higher rate of compensation, usually determined by a multiplier on the lodestar. Ketchum v. Moses (2001) 24 Cal.4th 1122, 1131-1132; Horsford v. Bd. of Trustees of Cal. State Univ. (supra) 132 CA 4th at pp. 394-5 ("Horsford");  Downey Cares v. Downey Community Devel. (1987) 196 Cal.App.3d 983.  In Cazares v. Saenz (1989) 208 Cal.App.3d 279, 288, the Court of Appeal explained why a contingent fee involves economic considerations separate and apart from the attorney's mere work on the case.

> In addition to compensation for the legal services rendered, there is the raison d'etre for the contingent fee: the contingency. The lawyer on a contingent fee contract receives nothing unless the plaintiff obtains a recovery. Thus, in theory, a contingent fee in a case with a 50 percent chance of success should be twice the amount of a noncontingent fee for the same case. Usually, the fee is contingent not only on the ultimate success of the case but also on the amount recovered; that is, the fee is measured as a percentage of the total recovery. Thus, the lawyer runs the risk that even if successful, the amount recovered will yield a percentage fee which does not provide adequate compensation.

Id. at p. 288.

Adjusting the fee upward by adding a premium due to the contingency factor fulfills "the statutory purpose of bringing the financial incentives to attorneys enforcing important constitutional rights ... into line with incentives they have to undertake claims for which they are paid on a fee for service basis." Ketchum v. Moses, supra, 24 Cal.4th at p. 1133.  In addition to the technical complexities of this case, the degree of success achieved, and contingent fee agreement, the delay in payment for any fees or costs since the case was first filed more than 5

**8**
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS'
FEES AND COSTS

years ago, justifies the reasonable lodestar multiplier requested here.

While this case involves State statutory claims, federal courts are in accord. In Morales v. City of San Rafael (9th Cir. 1996) 96 F.3d 359, 364 [opinion amended on denial of reh'g, (9th Cir. 1997) 108 F.3d 981] the Court found that the "district court was not only free but obligated to consider 'the results obtained' by Morales, or 'the extent of [his] success,' Hensley v. Eckerhart, 461 U.S. 424, 436, 440, 103 S.Ct. 1933, 1942, 1943 (1983) in calculating the lodestar figure." Moreover, the "results obtained" should include consideration of the significant non-monetary relief obtained. Id., 364-65 ["Thus, it served the public purpose of helping to protect Morales and persons like him from being subjected to similar unlawful treatment in the future. . . Thus, in determining a reasonable fee award on remand, the district court should consider not only the monetary results but also the significant nonmonetary results Morales achieved for himself and other members of society."] See also, Stanger v. McGee, No. 13-56903, –F.3d– 2016, WL 191986 *4 (9th Cir. Jan. 15, 2016)

The Declarations submitted by Class Counsel detail the success achieved and time expended in this litigation prior to the preparation of this Memorandum. "In statutory fee cases, federal courts, including our own, have uniformly held that time spent in establishing the entitlement to and amount of the fee is compensable." In re Nucorp Energy, Inc., 764 F.2d 655, 659-660 (9th Cir. 1985). This is so because it would be inconsistent to dilute a fees award by refusing to compensate attorneys for the time they reasonably spent in establishing their rightful claim to the fee. Id. at 660; Kinney v. Int'l Bhd. of Elec. Workers, 939 F.2d 690, 695 (9th Cir. 1991).

Class Counsels' lodestar fee, based on their reasonable hourly rates and time actually expended are as follows:

| Timekeeper | Hours Spent | Fees |
|---|---|---|
| William M. Krieg @ $700/hr. | 104.00 | $72,800.00 |
| Alicia Hinton @ $450/hr | 38.00 | $17,100.00 |
| Bryan Kemnitzer @ $800/hr | 90.00 | $72,000.00 |
| Elliott Conn @ $425/hr | 82.10 | $34,892.50 |
| Sean Barry @ $250/hr | 29.30 | $7,325.00 |
| | **UNADJUSTED LODESTAR FEE** | $204,117.50 |

Counsels' rates are reasonable and well within the range of hourly rates for consumer class action litigation charged by lawyers of similar age and experience the specialized area of complex civil litigation and class actions.  The rates are also consistent with rates approved by courts in the past in similar class action cases. (Decl. of Krieg ¶¶10-12; Decl of Kemnitzer ¶¶ 15-34.)  Class Counsel has long and extensive experience involving consumer and auto loan and finance issues, including substantial class action experience. (Decl. of Krieg ¶¶ 7-8; Decl of Kemnitzer ¶ 2.) Consumer class actions is a branch of civil litigation that is, in its own way, as complex and demanding as antitrust and securities lawsuits, and the financial institution defendants, such as CENTERONE here, are represented by experienced and knowledgeable counsel.

**8.     The Lodestar Enhancement Requested Is Modest And Well Within the Standard for Multipliers In Similar Litigation, Based on the Results Achieved and Other Factors.**

The maximum amount of fees that the parties negotiated in this case represents the lodestar

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

times a modest enhancement of about 1.43. A multiplier is frequently applied in complex litigation. Amaral v. Cintas Corp. No. 2 (2008) 163 Cal.App.4th 1157. Ketchum v. Moses (2001) 22 Cal.4th 1122, *supra*] also reiterated that the trial court is authorized to apply a multiplier to the lodestar in determining the appropriate award. Amaral, supra, 163 Cal.App.4th at 1132-1133. Under the factors set forth in Ketchum, Plaintiff's counsel would be entitled to a lodestar multiplier. The determination of a reasonable fees may use an analysis that cross-checks the lodestar against examination of the benefits to the class. Lealao v. Beneficial California, Inc. (2000) 82 Cal.App.4th 19. The "public service element and motivation to...enforce laws" may also justify a lodestar enhancement. State v. Meyer (1985) 174 Cal.App.3d 1061, 1073. The case law provides ample support for a 1.43 multiplier. In Chavez v. Netflix (2008) 162 Cal.App.4th 43, the appellate court **upheld 2.5 multiplier** in consumer class litigation, citing "quality of representation," "success achieved" and "rate of acceptance of the benefit offered to class members," as factors justifying an upward adjustment of the lodestar. *Id* at p. 60. The court further found that a **2.5 multiplier** was in line with other consumer class actions, such as  Wershba v. Apple Computer (2001) 91 Cal.App.4th 224, 255, 1 (**multipliers can range from 2 to 4** or even higher); City of Oakland v. Oakland Raiders (1988) 203 Cal.App.3d 78, (affirming a **multiplier of 2.34**); see also, In re Cenco Securities Litigation (N.D. Ill. 1981) 519 F. Supp. 332 [**4.0 multiplier**]; Arenson v. Board of Trade (N.D. Ill. 1974) 372 F. Supp. 1349 [**4.0 multiplier**].) The requested attorney's fees of $292,467.25 is only about a 1.43 multiplier on counsels'' lodestar, and is well within the comparable range of multipliers allowed in consumer class action settlements.

Class counsel thus requests a total award of attorneys' fees of $292,467.25, plus actual costs of $7,532.75, in accordance with the Settlement Agreement.   Class Counsels'' lodestar, above,  does not include the additional time that will be required for attending the final approval

hearing, and monitoring and providing additional declarations of the Administrator and Class Counsel in order to complete the refund distribution process, monitor the non-monetary relief, field inquiries and resolve disputes about payments, and finally complete the case.  In light of the success achieved and benefits to the Settlement Class, namely elimination of nearly $3.5 million in debt and refund of nearly all of the money obtained from Class Members, counsel's fee request is reasonable and modest.

In summary, the result achieved in this matter on behalf of Plaintiff and the entire class was excellent, the quality of representation was high, the case was taken on a contingency basis meaning that counsel have not been paid for work performed during the pendency of the litigation, the time spent is well documented, and the case promotes the public interest.  The stipulated amounts of fees and costs of $300,000, should be approved.

9.    **The Cross-Checking Method Supports Approval of the Requested Fee.**

Courts recognize the use of a cross-checking analysis in determining fair compensation and a proper multiplier in class fund cases and fee shifting cases as well. Lealao v. Beneficial California, Inc. (2000) 82 Cal.App.4th 19. Courts use a cross-checking analysis even where Class Members received no monetary relief. Hanlon v. Chrysler, 150 F.3d 1011 (9th Cir.1998).  Courts may use various "ways of using the same data– the amount of the proposed award and the monetized value of the class benefits– to accomplish the same purpose: to cross-check the fee award against an estimate of what the market would pay for comparable litigation services rendered pursuant to a fee agreement." Chavez v. Netflix, supra, at 65, citing Lealao, supra, at 47-50.

Under the common fund doctrine, fees may be based on a percentage of the fund and other monetized benefits to the Class.  Sanders v. City of Los Angeles (1970) 3 Cal.3d 252, 261. A

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

percentage-of-the-fund fee is proper when as here, there is a certain or easily calculable sum and/or a monetary fund that has been created by the litigation. Bank of America v. Cory (1985) 164 Cal.App.3d 66, 90-91.   Here, counsel's efforts resulted in a fund of $59,186.66, and monetary relief of about $3.5 million in elimination of Class Members' debt.

As stated recently in Ellis v. Toshiba America Information Systems, Inc., 218 Cal.App.4th 853 (2013), "As the trial court recognized, a percentage of the recovery analysis may be used to 'cross check' a lodestar amount, but it does not substitute for determining a lodestar. " ' "Under certain circumstances, a lodestar calculation may be enhanced on the basis of a percentage-of-the-benefit analysis. [Citations omitted.]" '" This approach 'anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary.' [Citation.]" (Consumer Privacy Cases (2009) 175 Cal.App.4th 545, 556–557)" See also, Stanger v. McGee, No. 13-56903, –F.3d– 2016 WL 191986 (9th Cir. Jan. 15, 2016).

Without this class action, CENTERONE would have kept the money collected and pursued or sold off the remaining debt to debt collection companies for collection, which would have burdened Class Members for years.   In Chavez, the court affirmed a fee equal to 27.9% of the value of free Netflix movie rentals provided under the settlement. The trial judge gauged class counsel's fee award based on the 20 to 40 percent range of contingency fees commonly found in the marketplace. Chavez, supra, 162 Cal.App.4th at 50, 65. In holding that a 27.9% percentage fee was proper, the Appeals Court stated:

> This is not out of line with class action fee awards calculated using the percentage-of-the benefit method: "Empirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee award in class actions average around one-third of the recovery." (Shaw v. Toshiba America Information Systems, Inc. (E.D. Tex. 1000) 91 F. Supp. 2d 942,972.)

13

Chavez, *supra*, 162 Cal.App.4th at 47 n. 11.

Similarly, Federal cases have established a 25 to 30% benchmark for fees based on a common fund. In re Activision Sec. Litigation (N.D. Cal. 1989) 723 F. Supp. 1373, 1375 (approving 30% fee); Vizcaino v. Microsoft (9th Cir. 2002) 290 F.3d 1043, 1050 (approving 28% of recovery fee; appendix to opinion shows that most percentage fees fall in the 25- 30% range).

The outcome of the litigation is also significant. "The 'results obtained' factor can properly be used to enhance the lodestar calculation where an exceptional effort produced an exceptional benefit," Graham v. Daimler-Chrysler (2004) 34 Cal.4th 553, 582. Here the class recovery eliminates about $3.5 million in debt, providing a direct and immediate and calculable benefit, to about 528 Class Members.

Here, the fees requested are modest relative to the value of the settlement. The concrete and readily quantifiable benefit to the Class is $3.5 million, plus the cash refund of about $59,186.66  Attorneys' fees and costs together of $300,000, equal only about 8.4% of the total monetary benefit (debt relief) to the Class. Using the 25% benchmark, compared to the monetized value of this settlement, the amount of attorneys' fees requested is modest and reasonable and should be approved.

**B.     The Requested Incentive Award to JONES is Reasonable and Should be Approved**

The Settlement Agreement provides that CENTERONE will pay the class representative, Mr. Jones, an incentive award of $2,000.  Incentive awards are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class and to compensate class representatives for their time, effort and inconvenience. A class representative functions as a stand-in for the entire class and assumes duties on behalf of the

14

class. <u>Gen. Tel. Co. of the Southwest v. Falcon</u> (1982) 457 U.S. 147, 155, <u>Armour v. Network Assoc., Inc</u>. (N.D. Cal. 2001) 171 F. Supp. 1044, 1048 (In fulfilling this role" ... a class representative is entitled to some compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action.");   <u>Kirkbride v. Continental Casualty</u> (N.D. Cal. 1993) 1993 WL 255497 (approving incentive payments in the amount of $5,000 to class representatives).

Incentive or service payments in this range are commonly awarded to those who undertake the risks and burdens of class action litigation.  See <u>Mann & Co. v. C-Tech Indus., Inc.</u>, 2010 WL 457572 (D. Mass. Feb. 5, 2010) at *2 (approving $15,000 incentive award); <u>Barcia v. Contain-A-Way, Inc.</u>, 2009 WL 587844 (S.D.Cal., March 6, 2009) at *5 (approving incentive awards of $12,000 to each of several representatives); <u>Bussie v. Allmerica Financial Corporation</u>, 1999 WL 342042, *4 (D. Mass. May 19, 1999) (approving $5,000 incentive awards); In re Relafen, 231 F.R.D. 52, 82 (D. Mass. 2005) (approving $8,000 incentive awards for each plaintiff).

The requested incentive award is well-earned in this case.  Over the nearly two years, JONES cooperated diligently with Class Counsel and devoted great time and effort to this case, as detailed in the accompanying Declaration of W. Krieg. (Decl. of Krieg ¶ 5.)  In addition, JONES was willing to accept the risks, potential liabilities, and possible negative consequences of bringing this lawsuit and taking on the responsibility of Class Representative.  The agreed upon $2,000 incentive award is reasonable and should be approved.

## III.   CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that this motion be granted, and that the Court enter an order awarding his $7,532.75 in costs, $292,467.25 in attorneys' fees, and $2,000.00 as an incentive award to JONES.

1     Dated: March 4, 2016

2

KEMNITZER, BARRON & KRIEG, LLP

/s/ William M. Krieg, Esq.

3

By: _____

4                                     WILLIAM M. KRIEG,

5                                     Attorney for Plaintiff and the Class

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS'
FEES AND COSTS

1

## PROOF OF SERVICE

2

STATE OF CALIFORNIA     )

3                        )        ss
COUNTY OF FRESNO         )

4

5          I am a citizen of the United States and a resident of the County aforesaid; I am over the age of eighteen years and not a party to the within entitled action; my business address is 2014

6   Tulare Street, Suite 700, Fresno, CA 93721.  On the date below, I served the within **NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND COSTS** on the interested

7   party(ies) in said action, addressed as follows:

8
Anna S. McLean, Esq.

9   Liên H. Payne, Esq.
Sheppard, Mullin, Richter & Hampton, LLP

10   Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109

11   Tel: (415) 434-9100
Fax: (415) 434-3947

12   E-Mail: amclean@sheppardmullin.com

13          lpayne@sheppardmullin.com

14

X       (by E-MAIL, ELECTRONIC TRANSMISSION, COURT'S CM/ECF ELECTRONIC

15          FILING SERVER) Based on a court order or an agreement of the parties to accept
service by e-mail or electronic transmission, I caused the above named document to be

16          electronically delivered to the parties in this case through their electronic mail addresses

17          shown above.

18          I, Vickie Mora, declare under penalty of perjury and the law of the State of California

19   that the foregoing is true and correct.

20          Executed this 4th day of March 2016 at Fresno, California

21                                              /s/ Vickie Mora

22                                              _____
                                                VICKIE MORA
23

24

25

26

27

28
                                        17
       MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS'
                                   FEES AND COSTS